[Cite as *State v. Davenport*, 2018-Ohio-3319.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                      CASE NO.  10-18-05

      v.

MICHAEL R. DAVENPORT,               O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Trial Court No. 15-CR-153

Judgment Affirmed

Date of Decision:  August 20, 2018

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Matthew K. Fox and Joshua A. Muhlenkamp* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Michael R. Davenport ("Davenport"), brings this appeal from the February 26, 2018, judgment of the Mercer County Common Pleas Court revoking his community control and sentencing him to serve an aggregate 48-month prison term for his two Robbery convictions in violation of R.C. 2911.02(A)(3), both felonies of the third degree. On appeal, Davenport argues that he was denied due process with regard to his community control sanction violations, and that the trial court erred by imposing consecutive sentences upon him without previously reserving the power to do so.

*Relevant Facts and Procedural History*

{¶2} On October 22, 2015, Davenport was indicted for two counts of Robbery in violation of R.C. 2911.02(A)(2), both felonies of the second degree (Counts 1 and 3), and two counts of Assault in violation of R.C. 2903.13(A), both misdemeanors of the first degree (Counts 2 and 4). Davenport originally pled not guilty to the charges.

{¶3} On April 6, 2016, Davenport entered into a written, negotiated guilty plea wherein he agreed to plead guilty to two amended counts of Robbery, both violations of R.C. 2911.02(A)(3), which were felonies of the third degree (rather than second degree felonies he was originally charged with). In exchange the State agreed to dismiss the remaining charges against him, and make no sentencing

recommendation. Notably, the written plea agreement indicated that consecutive prison terms were not mandatory but could be imposed by the trial court. (Doc. No. 47).

{¶4} On May 24, 2016, matter proceeded to sentencing. At the hearing the trial court analyzed the seriousness and recidivism factors under R.C. 2929.12(B), and then ultimately sentenced Davenport to community control. As to the prison sentence that would be imposed if Davenport violated community control, the trial court stated as follows.

> **The Court will notify the Defendant of a prison term for each offense of 24 months, and the Court will advise the Defendant that if he would have to serve those two, 24-month sentences, and was placed under post release control, which is mandatory for a period of three years on each count, upon his release from prison, he violates the terms of post-release control, he could be returned to prison for up to one half of each of those 24-month sentences.**

(May 24, 2016, Tr. at 8). The judgment entry stated that Davenport was notified that if he violated his community control sanctions he would face "a prison term of Twenty-four (24) months on each count." (Doc. No. 59).

{¶5} On July 25, 2016, State filed a notice of community control sanctions violation alleging that Davenport failed to establish a permanent residence and that he changed his residence without getting permission from his supervising officer in contravention of the terms of his community control. The matter was set for a hearing.

{¶6} On June 28, 2017, a hearing was held to inform Davenport of the charges against him regarding his alleged violation. Davenport indicated that he understood the charges and the matter was set for a further hearing.

{¶7} On August 4, 2017, a hearing was held wherein the State made an oral request to revoke Davenport's bond due to him testing positive for amphetamine, cocaine, fentanyl, methamphetamine, and morphine. Davenport also admitted to using heroin. At that time, Davenport's bond was revoked.

{¶8} On August 9, 2017, a hearing was held on the alleged community control violation. Davenport was notified of the fact that if he was found in violation he could be sentenced to incarceration. Nevertheless, Davenport admitted to violating his community control as alleged and the matter was set for disposition.

{¶9} On August 30, 2017, the matter proceeded to disposition. At the beginning of the hearing, Davenport's counsel argued in favor of keeping Davenport on community control despite the violation. His counsel stated, "Your honor, today I would start off with I don't think failure to change an address warrants going back to prison for four years." (August 30, 2017, Tr. at 4). Davenport's counsel then noted that he did test positive for drugs, but he admitted as much to his probation officer. Davenport's counsel indicated that Davenport was an addict and would benefit more from being sent to the W.O.R.T.H. Center. The State, however, argued in favor of revoking Davenport's community control and sending him to prison.

{¶10} The trial court elected to continue Davenport's community control and send Davenport to the W.O.R.T.H. Center as requested by the defense. However, the trial court notified Davenport that if he did not successfully complete the W.O.R.T.H. center he would be sent to prison. "[I]f you fail community control this time, the Court will impose the two, 24-month prison sentences." (*Id.* at 9). The judgment entry then stated, in bold lettering, that if Davenport violated his community control he would be subject to a prison term of Twenty-four (24) months on each count. (Doc. No. 107).

{¶11} On January 19, 2018, the State filed a notice of community control sanctions violation alleging that Davenport had been unsuccessfully terminated from the W.O.R.T.H. center.

{¶12} Davenport denied the allegation against him and wanted to proceed to a hearing. The matter proceeded to a hearing on February 13, 2018.

{¶13} At the hearing, the State called Adam Blevins, who worked at the W.O.R.T.H. Center. Blevins testified that he had worked there for 3 years and that he was familiar with Davenport.

{¶14} Blevins testified that Davenport arrived at the facility in September of 2017 and was terminated in January of 2018. Blevins testified that Davenport was terminated because there was evidence that he had been involved with bringing contraband into the facility.

{¶15} Blevins testified that the W.O.R.T.H. Center administration initially started an investigation believing that a staff member was bringing contraband into the facility, specifically tobacco. Blevins testified that he looked into the matter, having phone calls to and from the facility checked. While targeting employees in the investigation, Blevins learned that Davenport was coordinating with his boyfriend to have tobacco brought into the facility through a kitchen staff member.

{¶16} Blevins identified multiple calls Davenport had made to his boyfriend wherein Davenport directed his boyfriend to hide certain items in a trash can at Casa Lu Al, a restaurant in Lima.

{¶17} Blevins testified that a kitchen staff member confirmed that she was working with Davenport to bring contraband into the facility, and she was fired. After the investigation, Davenport was terminated from the W.O.R.T.H. Center, though Davenport denied any involvement.

{¶18} Following Blevins' testimony, the trial court found that Davenport was in violation of his community control for being unsuccessfully terminated from the W.O.R.T.H. Center. The trial court then proceeded to disposition.

{¶19} During the dispositional phase, Davenport called a witness to testify that Davenport had made arrangements to be involved in a medically assisted program for drug treatment. The witness testified that she did not think prison would benefit Davenport; however, the witness testified that she had worked at the

W.O.R.T.H. Center previously, that she was aware Davenport was unsuccessfully terminated, and that she was aware that contraband such as tobacco was taken very seriously there.

{¶20} The trial court then proceeded to the dispositional phase, ultimately revoking Davenport's community control and sentencing him to prison, stating:

> **The Court will therefore impose the prison terms that were noticed to the Defendant of 24 months on each count and order them to be served consecutively. The Court finding that the consecutive sentences are necessary to protect the public from future crimes and appropriately punish him, and are not disproportionate to the seriousness of his conduct and the danger that he poses to the public for the commission of these offenses.**
>
> **He did commit these offenses while he was out awaiting trial, or sentencing, or under community control sanctions, and his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes.**
>
> **The offenses, there being two, were committed as part of one or more courses of conduct. The harm having been caused was great enough that no single prison term for either one, so that they could be run concurrently, would adequately reflect the seriousness of his conduct.**

(Tr. at 47-48).

{¶21} A judgment entry memorializing Davenport's sentence was filed February 26, 2018. It is from this judgment that Davenport appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The Trial Court erred by denying Mr. Davenport due process as to the allegation of a violation of community control sanctions.**

-7-

**Assignment of Error No. 2**
**The Trial Court erred by imposing consecutive sentences at**
**disposition on the CCSV without previously reserving the power**
**to impose consecutive sentencing within any pre-CCSV *Brooks***
**notice.**

*First Assignment of Error*

**{¶22}** In Davenport's first assignment of error, he argues that he did not receive due process with regard to the allegation of his community control sanction violation. Specifically, Davenport seems to contend that there should have been a hearing to determine if Davenport was rightfully terminated from the W.O.R.T.H. center. Davenport argues that limiting his community control violation hearing to the *fact* of his termination, rather than the legitimacy of the *cause* of the termination, denied him due process.

**{¶23}** Despite Davenport's claim, both the cause of his termination from the W.O.R.T.H. Center and the fact of his termination were presented to the trial court through the testimony of Blevins, a W.O.R.T.H. Center employee.[1] There was ample testimony from Blevins to establish that Davenport did not successfully complete the W.O.R.T.H. center as required by the trial court due to Davenport's involvement in bringing contraband into the facility.

---

[1] As the State notes in its brief, Davenport did not exactly raise this issue to the trial court, therefore we could find that he waived it altogether, though we decline to do so.

{¶24} As Davenport notes, there are certain requirements that have to be met before community control can be revoked. There needs to be, *inter alia*, a written notice of the alleged violations, disclosure of the evidence, an opportunity to be heard and cross-examine witnesses, and a neutral and detached hearing body. *See State v. Miller*, 42 Ohio St.2d 102 (1975). Though Davenport disagrees, all of these requirements were present here and complied with.

{¶25} Davenport seems to be requesting this Court to implement a major shift and provide for some type of administrative hearing process for termination from the W.O.R.T.H. Center. Creating such a process or an administrative body to hear it is not within the province of this Court.

{¶26} Regardless, as to Davenport's community control sanction violation, the record is clear that Davenport received due process under the law. *See Morissey v. Brewer*, 408 U.S. 471 (1972); *State v. Miller*, 42 Ohio St.2d 102 (1975). Davenport was notified of his requirements under his community control, he was notified of his purported violation, he was provided a full hearing, with counsel, to contest that violation, and then when found in violation—for the second time—his violation was disposed of, by sentencing him to the previously reserved prison term. Therefore, his argument is not well-taken, and his first assignment of error is overruled.

*Second Assignment of Error*

**{¶27}** In Davenport's second assignment of error, he argues that the trial court did not reserve the power to impose consecutive sentences in the event that Davenport violated his community control. Specifically, Davenport contends that the trial court's statement that Davenport would be subject to a 24-month prison term on *each* count was insufficient to notify Davenport that he would be subject to consecutive prison terms.

**{¶28}** Davenport's arguments rely primarily on the Supreme Court of Ohio's decisions in *State v. Brooks*, 103 Ohio St.3d 134, 2004–Ohio–4746, and *State v. Fraley*, 105 Ohio St.3d 13, 2004–Ohio–7110. In *Brooks*, the Supreme Court of Ohio held that, "[p]ursuant to R.C. 2929.19(B)(5) and 2929.15(B), a trial court sentencing an offender to a community control sanction must, at the time of the sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation." *Id.* at paragraph two of the syllabus.

**{¶29}** *Fraley* addressed a different scenario. In *Fraley*, the Court had to determine "the timing of notification required by the statute in order to impose a prison term when an offender violates his community control sanctions multiple times." *Id.* at ¶ 15. At Fraley's original sentencing hearing, he was not notified of

the possible prison sentence that could be imposed if he violated community control. *See id.* at ¶ 19. However, at Fraley's third violation hearing, he was properly notified, and, thus, the Court concluded that Fraley could be sentenced to prison when he was found to have violated community control a fourth time. *Id.* The Court held that, "pursuant to R.C. 2929.19(B)(5) and 2929.15(B), a trial court sentencing an offender upon a violation of the offender's community control sanction must, at the time of such sentencing, notify the offender of the specific prison term that may be imposed for an additional violation of the conditions of the sanction as a prerequisite to imposing a prison term on the offender for a subsequent violation." *Id.* at ¶ 18. *Fraley* thus essentially held that "if at a subsequent violation hearing where the community control is continued the trial court notifies the offender of the specific prison term that will be imposed it cures the defect in the original sentence." *State v. Lyle*, 3d Dist. Allen No. 1-13-16, 2014-Ohio-751, ¶ 13, citing *Fraley* at ¶ 17.

{¶30} In this case, Davenport is correct that the trial court did not state the word "consecutive" when referring to his potential prison terms, and the trial court similarly did not state the number "48 months" as the total aggregate prison term. However, the omission of the term "consecutive" does not render the phrase "24 months on each count" to mean concurrent. *See State v. Ward*, 6th Dist. Wood No. WD-09-043, 2010-Ohio-2619, ¶¶ 15-18.

{¶31} At his original sentencing hearing, Davenport was notified that he could serve a prison term "for each offense of 24 months" and he was advised that "if he would have to serve those *two, 24-month sentences*" he would be subject to post-release control. (Emphasis added.) (May 24, 2016, Tr. at 8). Both the phrases "each offense" and "two, 24-month sentences" clearly indicate the imposition of consecutive sentences.

{¶32} Additionally, we note that at Davenport's first community control violation hearing, his attorney, speaking on his behalf, indicated that Davenport's relatively minor infraction of failure to notify the probation department of an address change did not warrant a *four-year* prison term. This implies that not only was the consecutive sentence notification given, but that it was understood by Davenport and his counsel, as they were clearly aware of the potential consequences if Davenport was found in violation of his community control.

{¶33} Nevertheless, when Davenport was then sent to the W.O.R.T.H. center after his first violation, the trial court stated to him, "[I]f you fail community control this time, the Court will impose the two, 24-month prison sentences." (Tr. at 9). The judgment entry ordering Davenport to W.O.R.T.H. stated, in bold, that if he violated his community control sanctions he would be subject to a prison term of Twenty-four (24) months *on each count*.

**{¶34}** While it may have also been a good practice for the trial court to have referred to aggregate 48-month prison term, we cannot find that Davenport has clearly and convincingly demonstrated that the trial court's sentence was improper here. R.C. 2953.08(G)(2). Therefore, Davenport's second assignment of error is overruled.

*Conclusion*

**{¶35}** For the foregoing reasons Davenport's assignments of error are overruled and the judgment of the Mercer County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**